62 Cal.App.4th 808 (1998)
In re NINFA S., a Person Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent,
v.
RUBEN S., Defendant and Appellant.
Docket No. D029325.
Court of Appeals of California, Fourth District, Division One.
March 4, 1998.
*809 COUNSEL
Mary Elizabeth Handy, under appointment by the Court of Appeal, for Defendant and Appellant.
John J. Sansone, County Counsel, Susan Strom, Chief Deputy County Counsel, and Kathryn E. Krug, Deputy County Counsel, for Plaintiff and Respondent.
Thomas E. Nagle, under appointment by the Court of Appeal, for Minor.
OPINION
McDONALD, J.
Ruben S. (Ruben) appeals the order terminating his parental rights entered after a Welfare and Institutions Code[1] section 366.26 hearing (the .26 hearing). Ruben argues the trial court abused its discretion by denying his request for a continuance of the .26 hearing to permit the completion of paternity testing, and that by preventing him from establishing his paternity he was deprived of his due process right to participate in the .26 hearing.

*810 I. Factual and Procedural Background

In June 1996 Ninfa S. was declared a dependent after the court entered true findings on a petition alleging jurisdiction under section 300, subdivision (b). At the dispositional hearing the court found Ruben was the "natural alleged father" and gave Ruben 60 days within which to show he was a "presumed father."
From July 1996 through April 1997, Ruben had no contact with Ninfa, made no effort to prove presumed father status, and did not complete paternity testing. After two continuances, the six-month review hearing was held in April 1997. The court terminated reunification services and referred the case to the.26 hearing. This court affirmed that order. (Ruben S. v. Superior Court (July 29, 1997) D028510 [nonpub. opn.].)
The department of social services' assessment report filed at the .26 hearing stated Ruben had not seen Ninfa since she was placed in foster care and had made no efforts to develop a relationship with her. The report also stated Ninfa was adoptable, 40 to 50 homes were available for a child like her, and her foster parents wished to adopt her.
At the .26 hearing Ruben's counsel stated Ruben had finally completed the blood draw necessary for paternity testing. He requested a 25-day continuance of the .26 hearing to allow Ninfa's blood draw and to complete the paternity test. The court denied the continuance. It found that Ninfa would likely be adopted if parental rights were terminated, that none of the statutory exceptions to termination of parental rights applied, and that adoption was in Ninfa's best interests. The court terminated parental rights. Ruben appeals.

II. The Trial Court Did Not Abuse Its Discretion by Denying the Continuance, Because Establishment of Genetic Linkage Would Have Provided No Information Relevant to the Issues Adjudicated at the.26 Hearing

(1) Ruben argues it was error for the court to deny his request for a continuance of the .26 hearing. Section 352 provides that a continuance shall be granted only on a showing of good cause and shall not be granted if it is contrary to the minor's best interests. "[T]he court shall give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements." (§ 352, subd. (a).) Continuances are discouraged (Jeff M. v. Superior Court (1997) 56 Cal. App.4th 1238, 1242 *811 [66 Cal. Rptr.2d 343]) and we reverse an order denying a continuance only on a showing of an abuse of discretion (In re Gerald J. (1991) 1 Cal. App.4th 1180, 1187 [2 Cal. Rptr.2d 569]).
The only basis of the requested continuance was Ruben's wish to establish his genetic link to Ninfa. However, Ruben does not explain how this information would have been relevant to any issue decided at the .26 hearing. A .26 hearing is concerned only with a long-term placement plan for the child, the preferred alternative being adoption and termination of parental rights. The court first decides whether it is likely the child will be adopted if parental rights are terminated. If so, the court examines whether termination of parental rights will be detrimental to the minor based on four enumerated circumstances. "[T]here is no window of evidentiary opportunity for a parent to show that in some general way the `interests' of the child will be fostered by an order based on some consideration not set forth in section 366.26." (In re Jennifer J. (1992) 8 Cal. App.4th 1080, 1090 [10 Cal. Rptr.2d 813].)
Here, genetics is irrelevant to either the likelihood of Ninfa's adoption or any of the four enumerated exceptions which might make termination of parental rights detrimental to Ninfa. Because further delay of the hearing would have interfered with Ninfa's need for prompt resolution of her custody status and her right to a permanent placement, and the sole reason asserted for continuing the hearing was to adduce information irrelevant to the pending proceeding, the court did not abuse its discretion by denying the continuance.

III. Ruben's Due Process Claim Is Without Merit

Ruben argues that because he was prevented from establishing his biological paternity he was denied standing in these proceedings; denial of standing to contest termination of parental rights, he argues, is a violation of his due process rights. However, a biological father's rights are limited to establishing his right to "presumed" father status, and the court does not err by terminating a biological father's parental rights when he has had the opportunity to show presumed father status and has not done so. (In re Spencer W. (1996) 48 Cal. App.4th 1647, 1652-1655 [56 Cal. Rptr.2d 524].)
Ruben makes no claim that he was denied the opportunity to show his entitlement to presumed father status. He instead argues that by precluding the completion of paternity testing the court deprived him of his right to know if he was Ninfa's father, and also deprived Ninfa of her right to know, and perhaps develop ties to, her paternal heritage and relatives. *812 In In re Jasmine J. (1996) 46 Cal. App.4th 1802 [54 Cal. Rptr.2d 560], a biological father who had not attained presumed father status was denied a contested .26 hearing at which his parental rights were terminated. (Id. at pp. 1805-1806.) He argued his rights were violated because he could have shown at the .26 hearing that the minor's best interests would have been served by placement with a biological relative. The court rejected his claim because he had no standing to assert that the minor's best interests would be better served by placement with relatives. (Id. at pp. 1806-1808.) Similarly, Ruben has no standing to assert that Ninfa's rights were violated by the court's order terminating Ruben's parental rights.
Ruben's argument is at bottom a claim that he had the right to know whether he and Ninfa were biologically related. However, because this information was not germane to any issue decided at the .26 hearing and would not have conferred on Ruben any additional rights to notice of or opportunity for a hearing, the denial of the continuance did not deprive him of any due process right.

DISPOSITION
The order is affirmed.
Kremer, P.J., and Huffman, J., concurred.
Appellant's petition for review by the Supreme Court was denied May 13, 1998.
NOTES
[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.