Filed 1/8/16  In re S.D. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re S.D., a Person Coming Under the Juvenile Court Law. | |
| | D068762 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. CJ1199) |
| v. | |
| L.D., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Laura J. Birkmeyer, Judge.  Dismissed.

Katherine A. Clark, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Lisa M. Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

L.D. (Mother) appeals an order granting a petition filed by the San Diego County Health and Human Services Agency (the Agency) under Welfare and Institutions Code[1] section 388 to suspend Mother's visitation with her four-year-old son S.D. On October 14, 2015, while the appeal was pending, the juvenile court ordered that Mother's visitation with S.D. resume. Based on the October 14, 2015, visitation order, the Agency filed a motion to dismiss Mother's appeal as moot and a request for judicial notice of the court's October 14 minute order and the reporter's transcript of the October 14 hearing. We grant the Agency's request for judicial notice and motion to dismiss the appeal as moot.

FACTUAL AND PROCEDURAL BACKGROUND

On November 21, 2014, the Agency filed a petition on behalf of then-three-year-old S.D. under section 300, subdivision (a), alleging Mother had subjected S.D. to a substantial risk of serious physical harm when she hit him "on the back and head with her fist multiple times, and slapped him in the face with her hand." The petition further alleged that Mother was arrested for child cruelty and had a history of hitting S.D. The Agency filed the petition and detained S.D. after witnesses called police to report that Mother had hit S.D. while in line at a Department of Motor Vehicles office. The witnesses reported that Mother struck S.D. multiple times with her fist on the back and head area and slapped him in the face.

---

[1]     All statutory references are to the Welfare and Institutions Code unless otherwise specified.

2

During supervised visitation before the contested jurisdiction/disposition hearing, Mother engaged in hostile and inappropriate behavior, including threatening to leave the visitation center with S.D., yelling and "cuss[ing]" at staff at the visitation center, and, when asked to leave, stating she would not leave unless physically removed by staff or police. At the contested jurisdiction/disposition hearing in January 2015, the court sustained the petition, removed S.D. from Mother's custody, and ordered that Mother was to be provided reasonable visitation. The court's minute order stated: "As long as Mother remains compliant with court orders, Agency directions and if Mother does not engage in explosive behaviors with anyone (minor, caregiver, Agency and court) [ ] and if Mother's visits are appropriate with no corporeal punishment or disrobing of the minor and no profanity with the minor or anyone else involved in the case, and only age appropriate language with the minor; [¶] if all conditions are met, then after two months, monitored unsupervised visits will occur at the Agency's office and if those go well, then after one month, short, unsupervised visits will begin in a public place. Moving to unsupervised contact is also contingent on the minor not having adverse reactions to visitation with Mother. Mother is to act appropriately with all parties, including representatives of the Agency." (Some capitalization omitted.)

After the jurisdiction/disposition hearing, Mother continued to engage in inappropriate and explosive behavior during visits with S.D., including pulling S.D.'s pants down and checking his buttocks, screaming obscenities at Agency social workers and attempting to throw a punch at a visitation supervisor, discussing the dependency case in front of S.D., ransacking and throwing food on the floor of a visitation room after

3

social workers left the room with S.D., and threatening to kill herself and return to the visitation location to "get even." The Agency reported that "four explosive episodes during visits" in S.D.'s presence had "negatively impacted [S.D.,] as evidenced by him crying, holding on tightly to [the social worker], and asking to be taken home."

In June 2015, the Agency filed a section 388 petition requesting the court to change its supervised visitation order to an order suspending visitation until Mother showed compliance and progress with her case plan and was "able to self[-]regulate without becoming aggressive and lashing out in the presence of the minor." After a contested evidentiary hearing, the court granted the petition, finding by clear and convincing evidence that it was in S.D.'s best interests to suspend Mother's visitation. Specifically, the court found it was detrimental to S.D. emotionally and physically to continue visitation with Mother if she was "unable to abide by the court orders previously put in place." (Capitalization omitted.)

## DISCUSSION

As noted, the Agency filed a motion to dismiss Mother's appeal as moot and a request for judicial notice of the court's October 14, 2015 reporter's transcript and minute order restoring Mother's supervised visitation. In considering whether an appeal has been rendered moot by a postappeal hearing, it is appropriate for us to take judicial notice of documents pertaining to the subsequent hearing. (*In re Karen G.* (2004) 121 Cal.App.4th 1384, 1390 (*Karen G.*) [judicial notice taken of minute order from six-month review hearing in deciding the appeal from jurisdiction and disposition orders was moot].)

4

In opposition to the motion to dismiss, Mother cites *In re Zeth S.* (2003) 31 Cal.4th 396, 412-413 (*Zeth S.*) for the proposition that an appellate court's ability to receive evidence of subsequent events in dependency appeals is limited when the evidence is not relevant to the issues raised in the trial court, is presented to the appellate court through unsworn statements of counsel for a nonappealing party, and is presented for the purpose of preventing reversal of the judgment. In *Zeth S.*, the California Supreme Court admonished the Court of Appeal "for relying on postjudgment events to reverse orders terminating parental rights." (*Karen G., supra,* 121 Cal.App.4th at p. 1389.)

The *Karen G.* court explained why notwithstanding *Zeth S.,* judicial notice of postappeal events is appropriate in considering whether an appeal is moot under circumstances similar to those here. The Supreme Court in *Zeth S.* stated: "Under the Court of Appeal's expansive view of the scope of an appeal of an order terminating parental rights, postjudgment evidence of circumstances involving the minor's present out-of-home custody status during the pendency of the appeal would be routinely and liberally considered. Appointed counsel for the minor in the appeal would be encouraged, and indeed obligated, to independently investigate such evidence outside the record, and bring it to the reviewing court's attention for consideration in the appeal. Basic formalities such as the need for a notice of appeal, and the requirement that issues raised on appeal first be raised in the trial court, would be dispensed with, and a best interests standard of review, applied anew from the perspective of the reviewing court, would be utilized to determine whether the juvenile court's judgment should be reversed and the case remanded for a new [section] 366.26 hearing, even where the juvenile court

5

itself has committed no legal error in terminating parental rights on the record evidence before it." (*Zeth S., supra,* 31 Cal.4th at p. 412.)

The *Karen G.* court noted the concerns in *Zeth S.* were not present in *Karen G.* First, the appealed order in *Karen G.* was not an order terminating parental rights. "Termination orders are 'conclusive and binding' and '[a]fter making the order, the [juvenile] court shall have no power to set aside, change, or modify it, but nothing in this section shall be construed to limit the right to appeal the order.' (§ 366.26, subd. (i).) In contrast, a jurisdictional and dispositional order is subject to modification pursuant to a proper showing of changed circumstances under section 388, *as are all subsequent orders except a final termination of parental rights*. The Legislature has thus recognized the dynamic and changing nature of dependency proceedings by creating a mechanism for the trial court to acknowledge changing circumstances." (*Karen G., supra,* 121 Cal.App.4th at p. 1390, italics added.) Like the jurisdiction/disposition order appealed in *Karen G.,* the visitation order appealed in the present case is subject to modification for changed circumstances.

Second, the basis for the requested dismissal in *Karen G.* was "evidence of which [an appellate court] can take judicial notice, not the unsworn statements of counsel that so concerned the *Zeth S.* court. 'Judicial notice may be taken of . . . [¶] . . . [¶] [r]ecords . . . of any court of this state . . . .' (Evid.Code, § 452; see also Evid.Code, § 459.)" (*Karen G., supra,* 121 Cal.App.4th at p. 1390.) Like the minute order from the six-month review hearing in *Karen G.*, the October 14, 2015 minute order in question here is a court record showing the circumstances giving rise to the appeal had changed. As such, the

order and related reporter's transcript are properly before this court (*ibid.*) and we properly may take judicial notice of them.

" '[A]n action that originally was based on a justiciable controversy cannot be maintained on appeal if all the questions have become moot by subsequent acts or events. A reversal in such a case would be without practical effect, and the appeal will therefore be dismissed.' [Citation.] The question of mootness in a dependency case should be decided on a case-by-case basis . . . ." (*In re Dani R.* (2001) 89 Cal.App.4th 402, 404-405.) In light of the juvenile court's restoration of Mother's visitation with S.D., there is no current controversy regarding visitation and no effectual relief that we can grant through this appeal. Consequently, the appeal is moot.[2]

Mother argues that the appeal should not be dismissed as moot because it presents an issue of public concern. (See *Renee S. v. Superior Court* (1999) 76 Cal.App.4th 187, 192.) We disagree that the issue raised in Mother's appeal is one of substantial public interest. The appeal simply presents the question of whether, on this particular record, there was substantial evidence that visitation would be detrimental.

---

[2] We recognize that the Court of Appeal in *In re Dylan T.* (1998) 65 Cal.App.4th 765 (*Dylan T.*) decided that an appeal from an order refusing to allow a mother visitation for no other reason than that she was incarcerated was not mooted by the mother's release from incarceration because the mother's reunification efforts could be terminated after six months and the lack of visitation during a significant portion of that was an error that could infect the outcome of subsequent proceedings. (*Id.* at p. 770.) *Dylan T.*, which Mother did not cite in her opposition to the motion to dismiss, is inapposite because Mother's reunification efforts could not be terminated after six months and the juvenile court in this case, unlike the court in *Dylan T.*, did not err as a matter of law in suspending visitation.

7

DISPOSITION

The request for judicial notice is granted.  The appeal is dismissed as moot.


McDONALD, J.

WE CONCUR:


HUFFMAN, Acting P. J.


McINTYRE, J.